## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FRANCIS NOLAN | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-20-2324 |
| O.C. SEACRETS, INC., | * | |
| *et al.*, | * | |
| Defendants | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.  (ECF Nos. 26, 30). Currently pending are defendants' Motion for Summary Judgment ("Motion") (ECF No. 40), plaintiff's Response and Opposition to Defendants' Motion for Summary Judgment ("Opposition") (ECF No. 44), and defendants' Reply to Plaintiff's Response and Opposition to Defendants' Motion for Summary Judgment ("Reply") (ECF No. 45).  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, defendants' Motion for Summary Judgment (ECF No. 40) is DENIED.

### I.     BACKGROUND

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case.  Scott v. Harris, 550 U.S. 372, 378 (2007).  Plaintiff Francis Nolan ("plaintiff") allegedly sustained personal injuries on August 19, 2017 while at a restaurant and entertainment venue

owned by defendants O.C. Seacrets, Inc. and O.C. Seacrets, LLC (collectively "defendants" or "O.C. Seacrets") in Ocean City, Maryland.  (Am. Compl., ECF No. 43 at ¶¶ 3, 7-8).  On the day of the incident, plaintiff, along with seven friends, arrived at defendants' property between 10:30 a.m. and 11:00 a.m. and sat at a semi-circle booth and table placed by defendants in a shallow portion of the Isle of Wight Bay next to defendants' premises.  (ECF No. 44-1 at 8).  Plaintiff was seated continuously at the table for approximately six hours before leaving his seat.  (ECF No. 40-5 at 12-13).  As plaintiff was getting up to leave his seat, his foot rubbed on the underwater metal footrest attached to the bottom of the seated portion of the table, causing "a sharp pain" in his foot. (ECF No. 44-1 at 9-10).  A friend then carried plaintiff to the beach, at which point another individual brought plaintiff some water.[1]  (Id.)  Defendants, however, have no incident report related to plaintiff from the date of his alleged injury.  (ECF Nos. 40-1 at 9, 44-1 at 24).  Plaintiff alleges extensive injuries resulting from this incident.  (ECF No. 43 at ¶ 21).

On August 11, 2020 plaintiff filed suit against defendants in this court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332.  (ECF No. 1 at ¶ 4).  On May 7, 2021 plaintiff filed an amended complaint.  (ECF No. 43).  Plaintiff states a negligence claim, asserting that defendants breached their duty of care to him by failing to inspect, maintain, repair, and replace the bay furniture at issue in this case and by failing to warn plaintiff of hazardous conditions on the bay furniture.  (Id. at ¶ 17).  Plaintiff seeks damages in an amount greater than $75,000.00.  (Id. at 5).  Discovery closed on March 31, 2021, and thereafter, the pending Motion and related pleadings were filed.

---

[1] The parties dispute the identity of the individual who handed water to plaintiff.  Plaintiff argues that the individual was an employee of defendants.  (ECF No. 44-1 at 10).  Defendants, however, note that plaintiff testified in his deposition that he does not know if the person was an employee. (ECF No. 45 at 9).

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient

to prevent an award of summary judgment.  Anderson, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party.  Anderson, 477 U.S. at 252.

## III.   **DISCUSSION**

Defendants move for summary judgment, asserting that plaintiff cannot establish a prima facie case of negligence because defendants did not owe plaintiff a duty and plaintiff failed to offer evidence as to what caused his alleged injury, among other arguments.  (ECF No. 40-1 at 2).  To assert a claim of negligence in Maryland, plaintiff must prove that: (1) the defendant was under a duty to protect plaintiff from injury, (2) the defendant breached that duty, (3) plaintiff suffered actual injury or loss, and (4) the injury or loss proximately resulted from defendant's breach of duty.[2]  100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co., 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013).  As a customer permitted to enter defendants' property for purposes connected with or related to defendants' business, plaintiff was an invitee.  See Rowley v. Mayor, 305 Md. 456, 465, 505 A.2d 494, 498 (1986).  An owner or occupier of land owes an invitee "the duty to use reasonable and ordinary care to keep [the] premises safe for the invitee and to protect [the invitee] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety will not discover."  Deboy v. City of Crisfield, 167 Md. App. 548, 555, 893 A.2d 1189, 1193 (2006) (citing Rowley, 305 Md. at 465).  Although Maryland courts have

---

[2] Because the court's jurisdiction over this matter is based on diversity of citizenship, the court must apply Maryland law to issues of substantive law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

emphasized that an invitor "is not an insurer of the invitee's safety," an invitor has a duty to protect the invitee against unreasonably dangerous conditions. Rybas v. Riverview Hotel Corp., 21 F. Supp. 3d 548, 561-62 (D. Md. 2014) (citing Moulden v. Greenbelt Consumer Servs., Inc., 239 Md. 229, 232, 210 A.2d 724, 725 (1965)).  The threshold question in determining whether defendants were owners or occupiers of land is whether defendants were in possession and control of the object which caused plaintiff's alleged injury. See Rowley, 305 Md. at 464.

In this case, defendants argue that they did not owe plaintiff a duty of care because the area in the bay where they placed tables and where plaintiff was allegedly injured was not part of defendants' premises.  (ECF No. 40-1 at 14).  Defendants maintain that they did not "own, lease, possess, or exclusively control" the area in which plaintiff was allegedly injured.  (ECF No. 40-1 at 14).  Plaintiff, however, contends that although defendants did not own the bay, they occupied it.  (ECF No. 44-1 at 17).  Specifically, plaintiff argues that the bay furniture which allegedly caused his injury was placed in the bay by defendants and was used as part of defendants' business. (Id. at 18).  There is clearly evidence in the record supporting plaintiff's position.  For example, defendants' general manager Scott Studds testified during his deposition that defendants placed tables in the bay and used those tables to provide cocktail service to customers at the time of plaintiff's alleged injury.  (ECF No. 44-2 at 8).  Mr. Studds acknowledged that defendants own, maintain, and service the furniture in the bay.  (Id. at 26).  Defendants also acknowledge that at the time of plaintiff's alleged injury, their employees would regularly inspect the furniture in the bay each day before the arrival of any guests.  (ECF No. 40-1 at 4).  In addition, Mr. Studds testified that defendants maintain mooring balls as anchors in the bay for boats and jet skis.  (ECF No. 44-2 at 9).  Although defendants note that the area in the bay is "open and accessible to the general public" and that defendants have "no right to restrict access to the location in the Bay where the

tables are located," (ECF No. 40-1 at 3), there is clearly evidence in the record from which a jury could conclude that defendants occupied the bay for their own commercial benefit.

In addition, defendants cite three cases—Leatherwood Motor Coach Tours Corp. v. Nathan, 84 Md. App. 370, 381–82, 579 A.2d 797, 802-03 (1990); Deering Woods Condo. Ass'n v. Spoon, 377 Md. 250, 273, 833 A.2d 17, 30 (2003); and Jenkins v. Great Atl. & Pac. Tea Co., 128 F. Supp. 169, 173 (D. Md. 1955)—for the proposition that defendants "did not have sufficient possession and control of the Bay to be answerable to others for its condition." (ECF No. 40-1 at 14) (internal quotation marks omitted). The cases cited by defendants, however, are inapposite. Leatherwood and Jenkins, for example, involved injuries in areas that were not actually possessed and controlled by defendants. See Leatherwood, 84 Md. App. at 382 (holding that the defendant bus company did not owe any duty to a passenger who slipped on gravel on the side of a public highway while attempting to board a bus); see also Jenkins, 128 F. Supp. at 173 (holding that the defendant grocery store did not owe any duty to a customer who fell over a wagon on the public sidewalk outside the store). As discussed above, however, there is clearly evidence in this case that defendants possessed and controlled the furniture in the area of the bay where plaintiff's alleged injury occurred. Further, although the defendant in Deering Woods possessed and controlled the pathway where plaintiff was injured, the pathway was part of miles of other trails stretched over roughly 3,000 acres of land owned by the defendant. Deering Woods, 377 Md. at 270 (holding that only continuous inspections of the pathway would have discovered the ice on which the plaintiff fell, and that the defendant owed no duty given the unreasonable burden of continuously inspecting thousands of acres of land). Here, however, defendants controlled and possessed approximately 100 tables for their commercial benefit in a relatively small area in a bay adjacent to defendants' premises. (ECF No. 44-2 at 10). The undersigned, therefore, concludes

that there is no basis for summary judgment on the issue of whether defendants occupied the bay and thus owed a duty to plaintiff.

Defendants next argue that assuming defendants owed a duty to plaintiff, they did not breach their duty because they did not have actual or constructive knowledge of the alleged dangerous condition on the table in the bay.  (ECF No. 40-1 at 18-19).  In order to sustain a cause of action of negligence against a proprietor under Maryland law, the customer must "show not only that a dangerous condition existed, but also that the proprietor had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee." Rehn v. Westfield Am., 153 Md. App. 586, 593, 837 A.2d 981, 984 (2003) (quoting Keene v. Arlan's Dep't Store of Baltimore, Inc., 35 Md. App. 250, 256, 370 A.2d 124, 128 (1977).  Plaintiff here contends, along with his proffered expert, that defendants were at least constructively aware of barnacles attached to the furniture in the bay. (ECF No. 44-1 at 20-21).  Specifically, plaintiff notes that Mr. Studds testified he was aware that barnacles can attach to furniture in the bay, but that defendants had no policy, practice, or procedure to inspect the furniture below the surface of the water unless a hazard was specifically brought to their attention.  (Id. at 21-22).

The court agrees that there is sufficient evidence in the record from which a jury could reasonably conclude that defendants were, at a minimum, constructively aware of the dangerous condition on the furniture in the area where plaintiff's alleged injury occurred.  In addition to Mr. Studds' testimony that he was "aware that barnacles can attach themselves to things in the water," Mr. Studds also acknowledged that defendants have removed the furniture from the bay at the end of the summer season to power wash barnacles off of the furniture.  (ECF No. 44-2 at 17).  Despite defendants' awareness that barnacles can attach to furniture in the water, Mr. Studds also noted

7

that defendants had no policy, practice, or procedure in place for employees to inspect the specific portions of furniture under water unless "something was specifically brought to our attention." (Id.)  Further, plaintiff offers the expert opinion of David Smith, Ph.D., a retired United States Coast Guard commander with aquatic and marine safety expertise, who asserted that it is generally "foreseeable that marine growth, including barnacles, will become attached [to furniture in an aquatic environment] and pose a foreseeable hazard" to patrons.  (ECF No. 44-4 at 4).  Based upon the evidence of record, the court concludes that there is a factual dispute to be resolved by a jury as to whether defendants had notice of the alleged defective condition on the furniture in the bay and whether they had the opportunity to remove it or warn plaintiff of its existence.  See Rehn, 153 Md. App. at 593.  Accordingly, there is no basis for summary judgment on this point.

Defendants further contend that plaintiff has no evidence as to what caused his alleged injury and offered only "purely speculative" theories.  (ECF No. 40-1 at 17).  Specifically, defendants note that plaintiff first asserted that his injury was caused by a piece of metal protruding from a table but then shifted his theory of causation to a barnacle attached to the furniture at which plaintiff was seated.  (Id. at 16).  Plaintiff, however, argues that his two expert reports support his position that his injury was caused by a barnacle attached to furniture in the bay and, therefore, generate a factual dispute for a jury to resolve.  (ECF No. 44-1 at 23).  While it is far from clear whether plaintiff will be able to sustain his burden of proving causation at trial, the court agrees that a factual dispute exists.  As defendants suggest, while plaintiff's allegedly shifting theory with respect to causation may bear on plaintiff's credibility as a witness, it is not appropriate for the court to decide this issue as a matter of law.  Similarly, the court notes that although defendants make a number of other points that may lead to productive cross-examination of plaintiff at trial,

it is not the court's role to resolve factual disputes at the summary judgment stage.  Anderson, 477 U.S. at 252.  Accordingly, there is no basis for summary judgment on the issue of causation.

Finally, defendants argue that they are entitled to summary judgment because of plaintiff's spoliation of evidence.  (ECF No. 40-1 at 20).  Spoliation is the destruction or material alteration of evidence or "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving the evidence."  Id. at 591.  A party seeking sanctions based on the spoliation of evidence must establish three elements:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

Goodman v. Praxair Servs. Inc., 632 F. Supp. 2d 494, 509 (D. Md. 2009) (quoting Thompson v. U.S. Dep't of Hous. & Urban Dev., 219 F.R.D. 93, 101 (D. Md. 2003)).

If a court finds the above elements to be met, then it may impose sanctions that must serve "the purpose of leveling the evidentiary playing field and . . . the purpose of sanctioning the improper conduct."  Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995).  Courts have broad discretion to impose sanctions for spoliation of relevant evidence and the available sanctions "rang[e] from dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorney's fees and costs."  Goodman, 632 F. Supp. 2d at

506 (citing In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 191 (S.D.N.Y. 2007)).  Dismissal of the case, however, is severe and "usually justified only in circumstances of bad faith or other like action."  Silvestri, 271 F.3d at 593 (citation omitted).

In this case, defendants argue that plaintiff engaged in spoliation of the only evidence from which defendants could disprove plaintiff's claims.  (ECF No. 40-1 at 20).  Specifically, defendants assert that plaintiff failed to provide "*any* information" related to his alleged injury for a year and a half following the incident despite defendants' repeated requests for additional information.  (Id. at 21-22).  Defendants acknowledge, however, that they received a letter from plaintiff's counsel on September 1, 2017—less than two weeks after plaintiff was allegedly injured—asserting "the vague statement that Plaintiff had 'a claim for injuries and/or property damage sustained in an accident which occurred on' August 19, 2017."  (Id. at 21).  Contrary to defendants' position, plaintiff contends that defendants became aware of his injury on the day it occurred when an O.C. Seacrets employee handed plaintiff a bottle of water to flush the wound and that defendants failed to investigate further and create a record of the incident.  (ECF No. 44-1 at 25).  As discussed above, however, the identity of the individual who handed a bottle of water to plaintiff on the day of the incident remains in dispute.  (See ECF Nos. 44-1 at 10, 45 at 9).

In addition, defendants rely on Silvestri, 271 F.3d 583 and Erie Ins. Exch. V. Davenport Insulation, Inc., 659 F. Supp. 2d 701, 707 (D. Md. 2009) for the proposition that summary judgment is appropriate in this case on the basis of spoliation.  As plaintiff notes, however, the cases cited by defendants are inapposite.  In Silvestri, for example, the plaintiff had access for two to three months to a vehicle that was the subject of the lawsuit during which time the plaintiff, his attorney, and his experts conducted inspections of the vehicle in anticipation of litigation.  Silvestri, 271 F. 3d at 591.  The vehicle title was then transferred to an insurance company, repaired, and

resold before defendant was even notified of plaintiff's claim or given the opportunity to conduct inspections of the vehicle, which was the sole piece of evidence in the case.  Id. at 585-87.  Similarly, in Erie, the plaintiff hired contractors to restore a house that was damaged by a fire and the subject of a subrogation claim, which resulted in the destruction of all the physical evidence of the fire.  Erie, 659 F. Supp. 2d at 702.  Unlike the cases cited by defendants, however, this case is not a typical spoliation situation in which the plaintiff destroyed or altered evidence.  See Silvestri, 271 F.3d at 593.  Indeed, the furniture that allegedly caused plaintiff's alleged injury was owned and controlled by defendants at all relevant times before and during the litigation of this case.  (ECF No. 44-2 at 26).  Although plaintiff also had an obligation to give defendants notice of access to the evidence in this case, see Silvestri, 271 F.3d at 591, plaintiff put defendants on notice less than two weeks after the alleged incident occurred when plaintiff's counsel sent defendants a letter notifying defendants of plaintiff's claim.  (ECF No. 40-1 at 8-9).  While defendants may pursue a productive line of questioning of plaintiff at trial as to whether plaintiff's communication lacked the diligence needed for defendants to properly investigate plaintiff's claims, it is not appropriate at this stage for the court to decide this issue as a matter of law.  The court concludes, therefore, that summary judgment on the basis of spoliation is not justified under the circumstances in this case.

## IV.    CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment (ECF No. 40) is DENIED.  A separate order will be issued.


October 14, 2021                                   ___/s/_____
                                                            Beth P. Gesner
                                                            Chief United States Magistrate Judge